UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JARAIELLE TAYLOR, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-2077** |
| **E.I. DUPONT DE NEMOURS AND COMPANY, ET AL** | **SECTION "B"(5)** |

## ORDER AND REASONS

Before the Court are defendant Denka Performance Elastomer LLC's ("DPE") motion to dismiss the petition for damages filed by plaintiffs Jaraielle Taylor and Leonca Batiste, individually and on behalf of their minor sibling, J.L., and on behalf of their deceased mother, Jada Batiste (collectively, "plaintiffs") (Rec. Doc. 18), defendant DPE's supplemental memoranda (Rec. Docs. 34, 38, and 41), and plaintiffs' memoranda in opposition (Rec. Docs. 37 and 40). For the following reasons,

**IT IS ORDERED** that defendant DPE's motion to dismiss (Rec. Doc. 18) converted to a motion for summary judgment is **GRANTED without prejudice to plaintiffs' rights to seek relief under Louisiana's Workers' Compensation Act against decedent's employer.**

**IT IS FURTHER ORDERED** that parties' joint motion to amend scheduling order and continue deadlines (Rec. Doc. 43) is **DISMISSED AS MOOT**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 14, 2024, plaintiffs filed this action in Louisiana state court against defendants Denka Performance Elastomer, LLC ("DPE"), E.I. du Pont de Nemours and Company ("DuPont"), DuPont Specialty Products USA, LLC ("DuPont Specialty"), and other unidentified defendants sued under fictitious names, including John Doe, ABC Corporation, and XYZ Insurance Company. *See* Rec. Doc. 8-1. Plaintiffs allege on or about July 13, 2023, Jada Batiste ("Ms. Batiste") was

1

involved in workplace accident that occurred at a Denka, DuPont and/or DuPont Specialty facility in LaPlace, Louisiana. *See* Rec. Doc. 8-1 at 4 ¶ 3. Plaintiffs allege that a rail car inside the facility, under the operation of defendant John Doe, later identified as Ryan Caldarera ("Mr. Caldarera"), pinned Ms. Batiste, ultimately causing her death. *See id.* Plaintiffs plead the subject incident was caused solely and proximately by the fault and negligence of defendants John Doe (Ryan Caldarera), ABC Corporation, DPE, DuPont and/Dupont Specialty, along with their insurance providers. *See id.* at 5 ¶ 6. Plaintiffs further allege survival and wrongful death actions against named defendants. *See id.* at 5 ¶¶ 7-8.

On August 23, 2024, named defendants removed this action to this Court alleging diversity subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. *See* Rec. Doc. 8. This Court granted plaintiffs' voluntary motion to dismiss defendant E.I. DuPont de Nemours and Company without prejudice on September 23, 2024. Rec. Doc. 22. Defendant DPE filed the instant motion to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Rec. Doc. 18. Thereafter, defendants DuPont Specialty Products USA, LLC was dismissed without prejudice at plaintiffs' request. Rec. Doc. 50.

As an initial matter, we ordered parties to produce evidentiary support for the employment relationship between decedent Jada Batiste, Ryan Caldarera, and DPE to determine whether plaintiffs' claims sound solely under Louisiana's Workers' Compensation Act ("LWCA"). Rec. Docs. 29; 30; 31. In response, defendant DPE produced a declaration from its Human Resources & General Affairs Manager, along with W-2s and paystubs showing that Ms. Batiste and Mr. Caldarera were employed by DPE at the time of the incident. *See* Rec. Docs. 34 and 34-1. Plaintiffs filed a declaration of Leona Batiste, daughter to the late Ms. Batiste, further indicating that the decedent was employed by DPE at the time of the incident. Rec. Doc. 37 at 6. Plaintiffs also

2

provided an employer-provided health insurance offer and coverage form 1095-C issued to Ms. Batiste by DPE, which in their view, supports their claim that DPE created an "unsafe work place that may have caused Jada Batiste[']s death." *See id.*; *see* Rec. Doc. 37-1.

After confirming the employment relationship between Ms. Batiste, Mr. Caldarera and DPE, the only remaining issue before the Court is whether DPE committed a qualifying intentional act under the LWCA, which would allow plaintiffs to proceed against DPE in tort. It is plaintiffs' contention that "DPE may have created an unsafe work environment," which raises a genuine issue of material fact as to defeat summary judgment. *See* Rec. Doc. 37 at 2. Plaintiffs contend they are unaware of the specific facts regarding a potentially unsafe work environment, however, they have determined that DPE was "aware of the possibility of ill and/or injuries that may occur due to the condition of the rail car." *Id.* at 3. Plaintiffs further allege that DPE transmitted a communication regarding the potential unsafe environment on July 13, 2023, the date of the subject incident. *Id.* Notably, plaintiffs "have not alleged any intention or willful conduct on the part of DPE." *Id.* Nevertheless, plaintiffs contend that the "allegations of an unsafe work place provide[] that [p]laintiffs' remedies would not lie exclusively in workers' compensation. *Id.*

Thereafter, the Court ordered plaintiffs to file documentation supporting this contention, affording plaintiffs a final opportunity to produce factual support of DPE's knowledge that the sued-upon injury was inevitable, or otherwise that it was *substantially certain* to occur to qualify as an intentional act. *See* Rec. Doc. 39. In response, plaintiffs filed an undated and unsigned document which in their view, "appears to confirm that a risk of harm was possibly known [to defendant DPE] relative to the operations of and the work conditions surrounding the rail car system that were operated at the time of Jada Batiste's death." Rec. Doc. 40 at 1. The document indicates that there was potential for on-job injury or illness on the date of the incident. Rec. Doc.

40-1 at 1-2. Although not explicitly stated, plaintiffs essentially argue that DPE was "substantially certain" that Ms. Batiste would be seriously injured the day of the subject incident due to the condition of the rail car, and therefore, plaintiffs' claims fall outside the scope of the LWCA. In opposition, DPE contends that plaintiffs' document is not competent summary judgment evidence, and even if the Court were to consider the document, it would nevertheless fail to create a genuine issue of material fact regarding DPE's intent. Rec. Doc. 41. Because this Court reviewed other submitted evidentiary materials and memorandum beyond defendant DPE's motion to dismiss, we construe defendant's motion to dismiss as a motion for summary judgment under Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 12(d).

## LAW AND ANALYSIS

### A. Motion for Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002); *see also Etheridge v. Dolgencorp Inc.*, 699 F. Supp. 3d 492, 496 (E.D. La. Oct. 18, 2023) (citations omitted).

In reviewing the record, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023) (citing *Reeves v. Sanderson Plumbing Prods.,*

4

*Inc.*, 530 U.S. 133, 150, (2000)). "The moving party bears the burden of identifying an absence of evidence to support the nonmoving party's case." *Id.* (citations omitted). Material in support of a motion for summary judgment may be considered as long as it is "capable of being 'presented in a form that would be admissible in evidence.' " *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)). A party cannot defeat summary judgment with "conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Flowers*, 79 F. 4th at 452 (citing *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)). Instead, the nonmovant must go beyond the pleadings and designate specific facts that prove that a genuine issue of material fact exists. *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

### B. Louisiana Substantive Law

On its face, plaintiffs' petition appears to be a negligence suit between parties with diverse citizenship. *See* Rec. Doc. 8-1 at 5-6 ¶¶ 6-8. "A federal court sitting in diversity applies the substantive law of the forum state[.]" *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014). Thus, Louisiana substantive law applies to plaintiffs' claims.

### C. Intentional Acts under Louisiana's Workers' Compensation Act

The Louisiana Workers' Compensation Act ("LWCA") "provides the exclusive remedy for personal injuries caused by an employer's or co-worker's negligence when those injuries arise out of and in the course of employment." *Martin v. Am. Midstream Partners*, LP, 386 F. Supp. 3d 733, 742 (E.D. La. May 15, 2019) (first citing La. R.S. §§ 23:1031, 1032; then citing *Duncan v. Wal-Mart La., L.L.C.*, 863 F.3d 406, 408 n.1 (5th Cir. 2017)). However, the LWCA's exclusivity provision does not apply to qualifying intentional acts. *See* La. R.S. § 23:1032(A)(1)(a) ("Except for intentional acts . . . the rights and remedies herein granted to an employee or his dependent on

account of an injury . . . for which he is entitled to compensation . . . shall be exclusive of all other rights, remedies, and claims for damages[.]"). "This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, . . . or employee of such employer[.]" La. R.S. § 23:1032(A)(1)(b).

"Intent" within the meaning of La. R.S. § 23:1032 means the employer either (1) consciously desired the physical result of his act; or (2) knows that the result is *substantially certain* to follow from his conduct. *See Bazley v. Tortorich*, 397 So. 2d 475, 481 (La. 1981) (emphasis added). "Further, mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing." *Id.* (citation omitted). Even still, "the plaintiff bears the burden of showing a qualifying intentional act, and that burden is steep." *Rolls on behalf of A.R. v. Packaging Corporation of America Incorporated*, 34 F.4th 431, 441 (5th Cir. 2022) (citation omitted). "In light of this stringency, '[b]oth federal courts and Louisiana courts agree that there must be a substantial *certainty* that a party will suffer harm to prevail on a claim of intentional tort.' " *Id.* (quoting *Wilson v. Kirby Corp.*, No. 12-80, 2012 WL 1565415, at *2 (E.D. La. May 1, 2012) (emphasis added)). "Thus, '[e]ven knowledge of a *high degree of probability* that injury *will* occur is insufficient to establish that the employer was substantially certain that injury would occur so as to impute intent to him within the intentional tort exception to the [LWCA's] exclusive remedy provisions.' " *Id.* (emphasis added)." Although not explicitly stated, it appears that plaintiffs' arguments fall under the "substantial certainty" prong of the intentional act exception. While a high bar, plaintiffs must establish that the DPE knew that Ms. Batiste's accident was substantially certain to occur, or that work area or the rail car at issue was "inevitable or incapable of failing."

6

" 'Substantially certain to follow' requires more than a reasonable probability that an injury will occur and 'certain' has been defined to mean 'inevitable' or 'incapable of failing.' " *Stanley v. Airgas-Southwest, Inc.*, 171 So. 3d 915, 916 (La. 2015) (citation omitted). Thus, "an employer's mere knowledge that a machine is dangerous and that its use creates a high probability that someone will eventually be injured is not sufficient to meet the 'substantial certainty' requirement." *Id.* (citing *Armstead v. Schwegmann Giant Super Markets, Inc.*, 618 So. 2d 1140, 1142 (La. App. 4 Cir. 1993), *writ denied*, 629 So. 2d 347 (La. 1993)). Even where an employer's conduct "goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character." *See Frank v. Shell Oil Co.*, 828 F. Supp. 2d 835, 849 (E.D. La. Oct. 31, 2011) (citing *Reeves v. Structural Preservation Systems*, 731 So. 2d 208, 210 (La. 1999) (some citation omitted). Louisiana courts have ''almost universally held that employers are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment." *Reeves*, 731 So. 2d at 211-13 (citations omitted).

Here, plaintiffs allege that Ms. Batiste "was involved in an incident while working for [DPE], DuPont, and/or DuPont Specialty[.]" *See* Rec. Doc. 8-1 at 4 ¶ 3. Upon plaintiffs' information and belief, [Ms. Batiste's co-worker, Ryan Caldarera], negligently operated the rail car, which allegedly caused the subject incident. *Id.* at 4 ¶ 5. Defendant DPE produced documentation that decedent Ms. Batiste and Mr. Caldarera, were employed by defendant DPE, and at the time of incident were acting in the course and scope of their employment. *See* Rec. Docs. 34; 34-1; 37; 37-1; *see, e.g., Harris v. M. Carbine Restorations, Ltd.*, No. 18-10432, 2019 WL

7558128, at *1 (E.D. La. Jan. 16, 2019) ("[D]ismissal with prejudice is too harsh a remedy when it is unclear whether the decedent was employed by [defendant].").

Plaintiffs do not allege that defendant DPE or Mr. Caldarera engaged in any intentional act as to fall within the "intentional act" exception to the LWCA. *See* Rec. Doc. 37 at 2-3. However, plaintiffs contend that DPE "may have created an unsafe work environment based on the evidence presented." *Id.* Plaintiffs allege that DPE "was aware of the possibility of ill and/or injuries that [] occur[ed] due to the condition of the rail car[t]." *Id.* at 3. In support, plaintiffs allege that DPE transmitted a communication regarding the potential unsafe work environment on July 13, 2023, the date of the subject incident. *Id.* In plaintiffs' view, the document supports "the allegations of an unsafe work place provides that [p]laintiffs['] remedies would not lie exclusively in workers' compensation." *Id.* Plaintiffs produced a declaration of Leonca Batiste, daughter to the late Jada Batiste, and a health coverage form 1095-C (Employer-Provided Health Insurance Offer and Coverage) issued to decedent from defendant DPE. Rec. Docs. 37 at 6; 37-1.

Plaintiffs further contend that *Samson v. Southern Bell Telephone & Telegraph Co.* stands for the proposition that if defendant DPE was "aware of a potential unsafe work environment before the death of Jada Batiste, regarding the rail cars, the area in which she was injured and killed and/or Ryan Caldarera's ability to assist Jada Batiste in operating the rail car[], the Workers['] Compensation Act should not be exclusive remedy afford[ed] to [p]laintiffs." *Id.* at 3-4 (citing 205 So. 2d 496 (La. App. 1 Cir. 1967)). Relying on *Samson*, plaintiffs aver that three factors must be met in determining whether the LWCA is the exclusive remedy for plaintiffs' claims: "(1) the employer has a duty to guard against requiring an employee to perform duties that are dangerous to the plaintiff's welfare, (2) that those duties are contrary to the communication advised of a

8

physician: and (3) the employer know or should have known those duties would result in the mental distortion of the employee." Rec. Doc. 37 at 3 (citing *Samson*, 205 So. 2d at 502-03).

In *Samson*, Louisiana's First Circuit reversed in part and remanded where the trial court improperly dismissed plaintiff's alternative tort claim because at the time, the LWCA did not provide relief for an employee's deteriorated mental condition resulting from the conditions of his employment. *See Samson*, 205 So. 2d at 498. Louisiana's First Circuit ultimately held that a nervous or mental breakdown caused solely by the stress of one's employment does not constitute an accidental injury under the Workers' Compensation Act. *See id.* Nevertheless, the court allowed the plaintiff to recover in tort. *See id.* ("[T]he courts have repeatedly held that where the injury is one for which compensation is not due under the workmen's compensation act, the employee may sue his employer in tort upon alleging the injury resulted from the employer's negligence."). This Court has recognized the *Samson*, or rather the *Richardson* exception. *See Lumar v. Monsanto Company*, 2018 WL 3458388, at *3-4 (E.D. La. July 18, 2018); *Martin v. Am. Midstream Partners, LP*, 386 F. Supp. 3d 733, 742-43 (E.D. La. May 15, 2019) (citations omitted). Thus, the *Samson* or *Richardson* exception may apply in instances where the plaintiff alleges mental or emotional distress caused by one's employment.

Here, however, plaintiffs' reliance upon *Samson* is unavailing because plaintiffs have not alleged claims of negligent or intentional infliction of emotional distress. Although plaintiffs contend that their allegations of an unsafe workplace are supported by *Samson*, it appears that plaintiffs are mistaken. Based on the previously discussed precedent, plaintiffs' claim of an unsafe work environment clearly falls under the LWCA. Notably, plaintiffs fail to allege that DPE required Ms. Batiste to perform any duties that were contrary to the communicated advice of a

physician. Nor have plaintiffs shown the DPE knew or should have know that Ms. Batiste's duties would result in her mental deterioration.

Further, parties agree that there is no genuine issue of material fact regarding the employment relationship between decedent Ms. Batiste, Mr. Caldarera, and defendant DPE. Both parties also acknowledge that both Ms. Batiste and Mr. Caldarera were working in the course and scope of their employment at the time of the subject incident. Plaintiffs concede that DPE's actions were not intentional or willful. Even interpreting plaintiffs' arguments as falling under the 'substantial certainty' prong of the LWCA's intentional act exception, their arguments still fall short to overcome summary judgment.

### A. Competent Summary Judgment Evidence

Plantiffs further contend, "plaintiffs should be allowed to continue the discovery process, more specifically depositions of [d]efendants and others that are under their control to determine how much information [d]efendant had regarding any unsafe work conditions[] that Jada Batiste may have been working under." Rec. Doc. 37 at 4. In a notable, yet strained effort to avoid summary judgment, plaintiffs have provided the Court with an undated and unsigned communication in relation to Leonca Batiste's declaration, which in plaintiffs' view, demonstrates a genuine issue of material fact with regard to DPE's knowledge of the purported unsafe work environment. *See* Rec. Doc. 40-1. Plaintiffs contend, the document "appears to confirm that a risk of harm was possibly known by [d]efendant, DPE relative to the operations of and the work conditions surrounding the rail car system that were operated at the time of Jada Batiste's death." Rec. Doc. 40 at 2. However, "[u]nsubstantiated assertions are not competent summary judgment evidence." *Delozier v. S2 Energy Operating, LLC*, 500 F. Supp. 3d 514, 519 (E.D. La. Nov. 12, 2020).

Rule 56 requires that "evidence proffered in opposition to summary judgment must be sworn or declared under penalty of perjury, or the proponent must otherwise show that a statement could be reduced to admissible evidence at trial." *Smith v. Palafox*, 728 Fed. Appx. 270, 275-76 (5th Cir. 2018) (first citing *Davis v. Fernandez*, 798 F.3d 290, 292 (5th Cir. 2015); then citing *Lee v. Offshore Logistical and Transport, L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2015)). Here, plaintiffs' document has not been sworn or made under penalty of perjury and plaintiffs have not explained how the document could be reduced to admissible evidence at trial. Even if the Court were to consider the document which appears to be a post-incident report, it still fails to establish DPE's knowledge or intent regarding unsafe work conditions prior to Ms. Batiste's unfortunate incident. The document indicates there was potential for on-job injury/illness, and appears to refer to the incident in which Ms. Batiste lost her life. *See* Rec. Doc. 40-1. However, as previously discussed, DPE's mere knowledge, or even gross negligence of permitting Ms. Batiste to work under such unsafe conditions is not sufficient to escape the LWCA's exclusive-remedy provisions.

It goes without saying that plaintiffs should be afforded a fair and meaningful opportunity to present their claims, however, there is no right to delay action on a motion for summary judgment until discovery is complete, or when there is no genuine issue of material fact. The Court has afforded plaintiffs ample opportunity to provide admissible evidence (or a reasonable showing) establishing a genuine issue of material fact with regard to defendant DPE's intent. Unfortunately, plaintiffs' evidence falls short, and defendant DPE's motion to dismiss converted to motion for summary judgment is hereby granted.

New Orleans, Louisiana, this 23rd day of May, 2025

_____
SENIOR UNITED STATES DISTRICT JUDGE